**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LANCE EVANS,

          Petitioner,

                                    CASE NO. 06-CV-13344
v.                                HONORABLE PAUL D. BORMAN

S. L. BURT,

          Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,**
**AND DENYING A CERTIFICATE OF APPEALABILITY AND**
**LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.      INTRODUCTION**

Michigan prisoner Lance Evans ("Petitioner") has filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.

Petitioner was convicted of first-degree murder following a jury trial in the Wayne County Circuit

Court and was sentenced to life imprisonment without the possibility of parole in 1994.  In his

pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, the denial of an

adjournment request, the admission of other acts and photographic evidence, prosecutorial

misconduct, and the refusal to read back testimony to the jury.  For the reasons stated, the Court

denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability and

leave to proceed on appeal *in forma pauperis*.

1

II.      **FACTS AND PROCEDURAL HISTORY**

Petitioner's conviction arises from the beating death of his girlfriend, Katie Branham, with a baseball bat at their residence in Detroit, Michigan on June 11, 1993.  At the start of trial, Petitioner informed the court that he wanted to present a diminished capacity defense and asked for an adjournment of trial.  The prosecution objected, stating that the record indicated that there might be a voluntary intoxication defense, but that there was no notice of a diminished capacity defense. Defense counsel acknowledged that he and Petitioner had not discussed a diminished capacity defense and said that his notes of several meetings with Petitioner reflected treatment, but not hospitalization, for alcohol-related problems.  Petitioner informed the court that he had attended Alcoholics Anonymous when released on parole (for a prior offense), but did not confirm that he had a history of mental illness.  The trial court denied the request for an adjournment and the case proceed to trial.

At trial, the victim's brother, Bill Branham, testified that he found his sister's nude and bruised body in a back bedroom of her home on June, 13, 1993.  The medical examiner testified that Katie Branham died from multiple blunt force injuries, consistent with being beaten with a baseball bat.  Branham, who was 26 years old, five feet four inches tall, and weighed104 pounds, also had a large amount of alcohol in her blood and urine at the time of her death.

Police officers testified about their investigation of the crime.  Officer Gregory Trozak testified that the police found the victim's nude and severely beaten body on a bed in a back bedroom of the home.  He observed blood on the pillow and mattress in that room, as well as on walls, doors, and other areas in the house.  Clothes were strewn about the house.  Photographs of the crime scene were admitted into evidence.

2

Several witnesses testified about their interactions with Petitioner and Katie Branham just prior to her death. Thomas Moore testified that the couple came to his house with one of their daughters in the afternoon on June 10, 2003. They were pushing a lawn mower, carrying a case of beer, and appeared to be drunk. Moore told them to go in the backyard before he left the premises and walked to the Red Robin Bar to play pool. When Petitioner joined Moore at the bar, Petitioner complained about not being able to find their food stamps and threatened to "kill that bitch" if he did not locate them. Petitioner also asked Moore to buy him a beer, which he did. When they returned to Moore's house, Branham was passed out on a loveseat in the living room. Petitioner picked up their baby daughter and walked toward his own house. Moore told James Rafferty to have Petitioner come back and get Branham. Moore then left his house and returned at 11:00 p.m. Some time later, perhaps between 1:00 a.m. and 3:00 a.m., Petitioner returned to Moore's house and asked him if he had found the food stamps. Petitioner searched the loveseat, but did not find them and left. Moore also testified that he had observed Branham with black eyes and contusions on previous occasions.

Petitioner's drinking buddy, James Rafferty, also recalled seeing Branham and Petitioner that day. He testified that he drank with them in Moore's backyard until Petitioner left and Branham passed out on a loveseat in the house. According to Rafferty, Branham had a problem with a bowel movement while at Moore's house. He noticed it when he saw her exiting the bathroom and returning to the loveseat where she passed out. Rafferty testified that Petitioner subsequently returned to Moore's house and took his baby girl home. When Moore came back to the house, he asked Rafferty to get Petitioner to take Branham home. Rafferty retrieved Petitioner and they returned to Moore's house. Petitioner tried to wake Branham. While she was staggering around,

3

Petitioner punched her in the mouth knocking her out, and she fell to the floor.  Petitioner then put her over his shoulder, carried her out, and walked toward their own house.  Rafferty returned to Petitioner's and Branham's house at 11:30 p.m.  When no one answered the door, he walked in and saw two nude people, one laying on top of the other, on a bed in the back bedroom.  He turned around and went into the living room.  Petitioner then came into the living room, buckling up his pants.  Rafferty asked him if he wanted to drink, but Petitioner declined and said he was going to sleep.  Rafferty did not observe any injuries to Petitioner's body at that time.  Rafferty left and returned to Moore's house.  Rafferty recalled seeing Petitioner in the dining room at Moore's house later that night, but was half asleep at the time.  Rafferty saw Petitioner looking for Valium at about 6:00 p.m. the next day.  Rafferty learned that Branham was dead two days later.  Rafferty had observed Branham with black eyes on four prior occasions, but had never seen Petitioner hit her.  Rafferty also testified that Petitioner and Branham kept a wooden baseball bat near the front door of their house.

Daniel Tinney, a friend of the victim, testified that he heard Petitioner and Moore arguing at Moore's house on June 10, 1993.  He saw Petitioner exit the house, yelling at Katie Branham, "Bitch you got my ass beat because you shit in my friend's house."  Petitioner punched Branham in the face, knocking her to the ground.  Petitioner then picked her up, put her over his shoulder, and walked down the street toward their house.  As Tinney drove down the street in his car, he heard Branham yelling and saw Petitioner strike her repeatedly in the head and body, kick her, and drag her into the house.  Tinney did not intervene.

The victim's sister, Lois Jean Dunigan, testified that Petitioner and her sister drank heavily and would fight when they were drunk.  She observed bruises and black eyes on her sister on several

4

occasions. Dunigan believed that Petitioner and her sister had drinking problems and acknowledged that she and her sister had argued about such matters.

Petitioner's mother and sister also appeared at trial. His mother, Olga Evans, testified that she picked up Petitioner on June 11, 1993 after he called her that afternoon. He looked a little drunk and told her that Branham had thrown him out. She drove Petitioner to the store to buy beer and he started drinking heavily. While they were at her house, Petitioner told her that he and Branham had a fight and that they struggled over a bat before going to bed. He also told her that when he went into the room to wake Branham the next morning, she was dead. Evans told Petitioner to lay down and went to see her daughter. She, her daughter, and her son-in-law subsequently drove Petitioner to Ohio. In her statement to police, Evans said that Petitioner told her that he thought he killed Branham with a baseball bat. According to Evans' statement, Petitioner "kept saying he didn't mean to do it and he wanted to kill himself, and he couldn't go back to jail." Evans agreed with her prior statement and said that the officer just left out the part about the struggle with a baseball bat. Evans admitted that she did not testify about such a struggle during the preliminary examination.

Petitioner's sister, Tonnie Lynch, testified that she was at work on June 11, 1993 when her mother told her that Branham had died. She went to her mother's house and spoke to Petitioner. He told her that Katie was dead but did not tell her what happened. She left the house, but returned after work. Petitioner was drunk and laying on the couch. He told her not to worry and to get on with her life. When she saw him the next day, he was drinking again. He wanted money for a bus to leave the state. Instead, she, her mother, and her husband drove him to Athens, Ohio to stay with family. Lynch testified that Petitioner admitted hitting Branham with a bat and said that he just hit her too hard. Lynch did not observe any injuries on Petitioner when they went to Ohio. She

5

admitted that Petitioner and Branham got into fights when they were drunk and that she had observed Branham with black eyes on two prior occasions.

At the close of trial, the jury convicted Petitioner of first-degree murder. The trial court subsequently sentenced him to life imprisonment without the possibility of parole.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting that: (1) counsel was ineffective for failing to investigate and present a diminished capacity defense/sufficient intoxication defense, (2) the trial court erred in admitting photographs of the victim's body and blood stains in the house, (3) the prosecution improperly commented on his right to remain silent and referred to a prior incarceration, and (4) the trial court improperly denied the jury's request for re-reading of testimony. The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's conviction. *People v. Evans*, No. 172778, 1996 WL 33348558 (Mich. Ct. App. Nov. 1, 1996) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Evans*, 456 Mich. 860, 568 N.W.2d 676 (1997).

Petitioner subsequently filed a motion for relief from judgment with the trial court asserting that: (1) the trial court erred in denying an adjournment which impeded his ability to prepare a defense, and (2) trial counsel was ineffective for failing to obtain an expert and for failing to seek suppression of testimony referring to a prior incarceration. The trial court denied the motion on March 8, 1999. Petitioner sought reconsideration. On April 5, 2004, the trial court issued an amended order denying the motion for relief for relief from judgment pursuant to Michigan Court Rule 6.508(D). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for "failure to meet the burden of establishing entitlement to relief

6

under MCR 6.508(D)." *People v. Evans*, No. 255347 (Mich. Ct. App. Jan. 3, 2005) (unpublished).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was

similarly denied. *People v. Evans*, 474 Mich. 898, 705 N.W.2d 120 (2005). Petitioner's motion for

reconsideration was also denied. *People v. Evans*, 474 Mich. 1065, 711 N.W.2d 22 (2006).

Petitioner, through counsel, then filed the present petition raising the following claims:

I.     The trial court abused its discretion in denying defense counsel's oral motion for an adjournment on the day of trial when defense counsel admitted that he needed additional time to secure an expert witness in support of the defense of diminished capacity, thereby denying Petitioner effective representation and due process of law pursuant to US Const Ams V, VI, XIV.

II.    Petitioner was denied a fair trial when the trial court admitted irrelevant bad act evidence, where the prosecution failed to show that its probative value to a material issue outweighed its inherently prejudicial character, thereby denying Petitioner due process under US Const Ams V, XIV.[1]

III.   The trial court violated Petitioner's due process rights by admitting unfairly prejudicial photographs of the complainant, and alleged blood smears without proper foundation, thereby denying Petitioner due process of law pursuant to US Const Ams V, XIV.

IV.    Petitioner's due process rights were violated when the prosecutor made reference to Petitioner's right to remain silent at trial and gave commentary about Petitioner's prior convictions, and when the trial court refused to allow re-reading of key testimony to the jury, thereby denying Petitioner due process of law pursuant to US Const Ams V, XIV.

Respondent has filed an answer to the petition asserting that it should be denied because the claims

lack merit and/or are barred by procedural default.

## III.    ANALYSIS

---

[1]This is the second claim in the habeas petition. The second claim in the brief in support of the petition asserts that the trial court denied Petitioner a fair trial and the right to compulsory process by refusing to adjourn to allow counsel to secure an expert witness. The Court will address both issues in this opinion.

### A.      Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's

effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable
>          application of, clearly established Federal law, as determined by the
>          Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of
>          the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694.  "In order for a federal court find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.      Ineffective Assistance of Counsel Claims**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate and prepare a diminished capacity defense[2] and for failing to properly

---

[2] In 1994, the state legislature enacted Mich. Comp. Laws § 768.21a, which sets forth the legal standard for an insanity defense in Michigan. The Michigan Supreme Court has since held that the statute abolished the diminished capacity defense in Michigan and that insanity is the sole standard for determining criminal responsibility as it relates to mental illness or retardation.  *See People v. Carpenter*, 464 Mich. 223, 241, 627 N.W.2d 276 (2001); *see also Wallace v. Smith*, 58 Fed. Appx.

present a voluntary intoxication defense. Respondent contends that these claims lack merit and do not warrant relief.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

---

89, 94 n.6 (6th Cir. 2003). At the time of Petitioner's crime, however, diminished capacity was a possible defense to a specific intent crime under Michigan law.

adversarial process that the [proceeding] cannot be relied on as having produced a just result."

*McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this issue, stating in relevant part:

> Defendant contends that his trial counsel was ineffective in failing to investigate and present a diminished capacity defense. In making such an argument, defendant uses the terms "diminished capacity" and "voluntary intoxication" interchangeably. The terms are not, however, synonymous. Although both defenses involve a claim that the defendant lacked the capacity to entertain the specific intent necessary for conviction, the cause of the loss of capacity differs depending on which defense is asserted. Michigan Criminal Law and Procedure, (2nd ed), §§ 42.55, 44, pp 160, 167. The defense of intoxication operates where the defendant suffers from an impairment in capacity due to alcohol or drug ingestion. *Id*. at § 42.55, p 163. Mental illness, however, is the triggering mechanism for any claim of diminished capacity. *Id*. Underscoring the distinction between "diminished capacity" and "voluntary intoxication" is the fact that there are separate jury instructions for each offense.

> A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses. *People v. Kelly*, 186 Mich App 524; 465 NW2d 569 (1990). To prevail on an ineffective assistance claim, however, defendant must show that he made a good faith effort to avail himself of that right. *Id*. Here, defense counsel indicated he did not learn about defendant's desire to present a diminished capacity defense until the day before trial commenced. There is nothing in the record suggesting counsel should have been aware of the necessity of raising such a defense prior to that date. Upon realizing his client wished to present the defense of diminished capacity, counsel immediately moved for an adjournment so he could obtain a psychological evaluation. The motion was denied. Under these circumstances, we find defendant has failed to establish that his trial counsel was ineffective.

> Defendant's contention his trial counsel failed to present a sufficient intoxication defense is also without merit. Defense counsel questioned witnesses regarding defendant's history of alcohol use and his alcohol intake on the weekend Katie was murdered. During closing argument, defense counsel attempted to persuade the jurors defendant was so intoxicated on the night in question he lacked the specific intent required to support a first-degree murder conviction. The jury was properly instructed regarding the voluntary intoxication defense. On these facts, we find counsel's performance was reasonable.

*Evans*, 1996 WL 33348558 at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. It is true that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted). Petitioner, however, has not established that defense counsel was deficient. The record reveals that counsel met with Petitioner several times before trial and was aware of Petitioner's alcohol problems and the fact that Petitioner was likely intoxicated at the time of the offense. Counsel thus elected to proceed with a voluntary intoxication defense to the first-degree murder charge. This decision was reasonable. Under Michigan law, voluntary intoxication is a defense to a specific intent crime when the defendant's degree of intoxication is so great as to render him incapable of forming the requisite specific intent. *See People v. Savoie*, 419 Mich. 118, 134, 349 N.W.2d 139 (1984); *People v. King*, 210 Mich. App. 425, 428, 534 N.W.2d 534 (1995). At trial, defense counsel questioned witnesses about Petitioner's history of alcohol abuse and his consumption of alcohol at the time of the crime. He argued that Petitioner's alcohol use impeded his ability to form the requisite intent for first-degree murder. Counsel also ensured that the trial court instructed the jury on the defense of voluntary intoxication. Such steps were reasonable and appropriate given the circumstances of the case. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel

claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner has not shown that defense counsel was deficient for failing to investigate and pursue a diminished capacity defense. According to counsel, Petitioner never indicated any desire to raise a diminished capacity defense until the start of trial. More importantly, based upon his meetings with Petitioner, defense counsel had no reason to believe that Petitioner suffered from a mental illness which would warrant further investigation into a diminished capacity defense. As noted by the Michigan Court of Appeals in this case, mental illness is the triggering mechanism for a diminished capacity claim under state law. "The defense of diminished capacity is available only where it is shown that a defendant's impairment rendered him unable to formulate the specific intent to commit a crime; it is not available where testimony establishes only that a defendant could not fully appreciate the consequences of his acts." *People v. Denton*, 138 Mich. App. 568, 573, 360 N.W.2d 245 (1984). The record fails to reveal that Petitioner suffered from a mental illness sufficient to support a diminished capacity defense (distinct from voluntary intoxication). Even Petitioner's own expert admits that "there was no clinical evidence that the defendant suffered from a mental illness as defined above, although he did suffer from a longstanding severe and chronic substance dependency." *See* Report by Dr. Firoza B. Van Horn, attached to petition. Defense counsel was not deficient for failing to investigate or present a diminished capacity defense given the paucity of evidence to support such a claim. Moreover, when Petitioner advised counsel at the start of trial that he wished to pursue such a defense, counsel asked for a continuance to investigate the matter, but the trial court denied the request. Counsel's actions were reasonable under such circumstances.

13

Petitioner also appears to assert that counsel could have presented a better intoxication defense by offering expert testimony. However, the use of an expert on voluntary intoxication, even if favorable to Petitioner, was not necessary for the presentation of the defense. As another court has explained: "While detailed expert testimony regarding the effects of alcohol on an individual's appreciation of consequences may have been helpful to the jury, the effects of excess alcohol consumption are not necessarily outside the keen of the average juror." *Grayson v. Thompson*, 257 F.3d 1194, 1221 (11th Cir. 2001); *see also United States v. Boyles*, 57 F.3d 535, 551-52 (7th Cir. 1995). Simply stated, the jurors could sufficiently appreciate the possible negative effects of alcohol on Petitioner's behavior and state of mind, as argued by defense counsel, without the benefit of an expert's opinion. Defense counsel presented testimony and argument in support of Petitioner's intoxication defense, but the jury nonetheless rejected it. Petitioner has not shown that expert testimony would have changed that outcome.

Moreover, even if defense counsel had presented expert testimony, such as Dr. Van Horn's report, on Petitioner's intoxication, there is no "reasonable probability" that the jury would have accepted the voluntary intoxication defense and reached a different result. The record is replete with evidence of Petitioner's coherent, intentional, premeditated, and deliberative conduct. First, he specifically threatened to kill Branham when he could not locate their food stamps. Second, despite his drinking, he was able to travel between Moore's house, the Red Robin Bar, and his own home. Third, he was able to communicate with his friends and get Moore to buy him a beer at the bar. Fourth, he brought his baby girl home and later carried Branham home on his own. Fifth, he argued with Moore and was angry with Branham for having a bowel movement at Moore's house. Sixth, he returned to Moore's home to look for the food stamps. Seventh, he apparently had or was

14

attempting to have sexual relations with Branham, became aware that Rafferty had entered the home, and declined to go drinking with him.  Eighth, he struck Branham repeatedly on their way home and used a baseball bat to beat her to death.  Lastly, he did not report Branham's death to the authorities and instead fled to Ohio.  There was ample evidence that Petitioner had the specific intent to kill and that he was capable of premeditation and deliberation despite his consumption of alcohol.  Consequently, there is no reasonable probability that having an expert testify about Petitioner's intoxication would have changed the outcome at trial.  *See Alder v. Burt*, 240 F. Supp. 2d 651, 674 (E.D. Mich. 2003) (rejecting petitioner's claim that trial counsel was ineffective for failing to call an expert witness on intoxication).  Given the significant evidence of guilt presented at trial, including Petitioner's own statements and admissions, Petitioner has failed to establish that counsel was deficient and/or that he was prejudiced by counsel's performance as required under *Strickland*.  Habeas relief is not warranted on this claim.

### C.      Denial of Adjournment Claim

Petitioner relatedly asserts that he is entitled to habeas relief because the trial court denied his request for an adjournment before trial so that he could obtain an expert witness and pursue a diminished capacity defense.  Respondent contends that this claim lacks merit.[3]

The right of an accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. State*, 388 U.S. 14, 19 (1967).  However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  *United*

---

[3]This claim appears to be barred by procedural default since Petitioner first properly presented this claim to the state courts in his motion for relief from judgment and the courts denied him relief pursuant to Michigan Court Rule 6.508(D).  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).  The Court need not address this issue, however, as the claim lacks merit.

*States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). Additionally, a trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case. *See Unger v. Sarafite*, 373 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (recognizing that trial courts have "broad discretion" in matters related to continuances). When a habeas petitioner challenges the grant or denial of such a request, not only must there have been an abuse of discretion, the trial court's decision "must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986).

The trial court did not abuse its discretion nor violate Petitioner's constitutional rights in denying his request for an adjournment. First, Petitioner made the request just prior to the start of trial and defense counsel acknowledged that he did not have prior reason to investigate or pursue a diminished capacity defense. Second, Petitioner was not deprived of a substantial defense at trial given that he was able to present a voluntary intoxication defense to the jury through lay witness testimony and given that the lack of evidence of mental illness to support a diminished capacity defense. Petitioner has not shown that the trial court's denial of his adjournment request constituted an abuse of discretion, deprived him of a substantial defense, or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### D.    Other Acts Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence of his prior incarceration. Respondent contends that this claim is not

16

cognizable on habeas review and lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[4] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief. Petitioner has not shown that the reference to a prior incarceration rendered his trial fundamentally unfair. The reference was brief and the prosecution did not make a character or propensity argument based on that evidence. Furthermore, as previously discussed, the evidence of

---

[4]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Petitioner's guilt was overwhelming.  Habeas relief is not warranted on this claim.

**E.     Photographic Evidence Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting photographs of the victim and the blood stains in the house.  Respondent contends that this claim was not raised as a federal constitutional issue in the state courts and is therefore unexhausted and procedurally defaulted.

As noted, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68.  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *Bugh*, 329 F.3d at 512.

The Michigan Court of Appeals denied relief on this claim finding that the photographs were relevant and admissible to establish intent to kill and premeditation, to bolster the credibility of the prosecution's expert and refute the defense argument of accident, and to depict the crime scene.  *See Evans*, 1996 WL 33348558 at *2.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial.  *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997), for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law").  Because the photographs were relevant and admissible under state law, Petitioner cannot show that he was denied a fair trial by their admission. Habeas relief is not warranted on this claim.[5]

---

[5]Given this determination, the Court need not address Respondent's default argument.

**F.      Prosecutorial Misconduct Claims**

Petitioner also asserts that he is entitled to habeas relief because the prosecutor commented on his right to remain silent and not testify at trial and referenced his prior incarceration. Respondent contends that these claims are barred by procedural default and/or lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

19

Petitioner first asserts that the prosecutor engaged in misconduct during closing arguments by commenting on his right not to testify and to remain silent.  The record reveals two such instances:

> And you're going to hear an instruction in this case that the Defendant did not testify, and he has right not to testify.  And you can't consider what maybe he would have said.  That's his absolute right.  Now, just like evidence that hasn't been admitted, he has a right not to testify, and that's where the consideration of it ends.  You don't hold it against him.  You just consider the evidence that has been admitted in this case.

12/14/93 Trial Tr., p. 103.

> Remember when I talked very briefly, and I said that the Defendant did not take the stand.  He did not testify, and the Judge is going to instruct you that you can't imagine what he might have said.  And you can't use that against him.

12/14/93 Trial Tr., p. 192.  Respondent contends that this claim is barred by procedural default because Petitioner failed to object to the remarks at trial.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained

20

denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing this claim, the court relied upon a state procedural bar—Petitioner's failure to object at trial. *See Evans*, 1996 WL 33348558 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th

21

Cir. 1983).

Nonetheless, the Court notes that Petitioner cannot establish prejudice as this claim lacks merit. The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). *Griffin* thus prevents a prosecutor or trial judge from suggesting to the jury that it may treat a defendant's silence as substantive evidence of guilt. *See Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). Indirect references to a defendant's failure to testify can violate the Fifth Amendment. *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000). A reviewing court must "look at all the surrounding circumstances in determining whether or not there has been a constitutional violation." *Id*. The relevant factors are: (1) whether the remarks are "manifestly intended" to reflect on the accused's silence or are such that the jury would "naturally and necessarily" take them as such; (2) whether the remarks were isolated or extensive; (3) whether the evidence of guilt was otherwise overwhelming; and (4) what curative instructions were given. *Id*. at 533-34.

Applying these factors, the Court concludes that the prosecutor's statements did not violate Petitioner's constitutional rights. First, while the prosecutor intended to comment on Petitioner's right not to testify, the prosecutor accurately stated that the jury could not use his silence against him. As to the second factor, the prosecutor's reference was isolated – only two references during closing arguments. *See United States v. Epley*, 52 F.3d 571, 577 (6th Cir. 1995). With respect to the third factor, there was overwhelming evidence of Petitioner's guilt at trial. Lastly, as to the fourth factor, the trial court gave appropriate curative instructions. The court instructed the jury that the prosecution bore the burden of proof and that Petitioner had no obligation to produce any evidence, testify, or prove his innocence. Such instructions, even though given during general jury

22

instructions and not at the time of the prosecutor's remarks, weigh in favor of finding that the prosecutor's comments were not unconstitutional.  *See Epley*, 52 F.3d at 577; *Spalla v. Foltz*, 788 F.2d 400, 404 (6th Cir. 1986).[6]  Accordingly, the Court concludes that the prosecutor's remarks did not deny Petitioner a fair trial.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

Petitioner also alleges that the prosecutor engaged in misconduct by referencing his prior incarceration when reading a statement from Petitioner's mother in which she said that Petitioner told her that he did not mean to kill the victim, that he wanted to kill himself, and that he "could not go back to jail." *See* 12/8/93 Trial Tr., p. 154.  Respondent contends that this claim lacks merit.

The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

Generally, evidence that tends to show the commission of other criminal acts by a

---

[6]Indeed, the Sixth Circuit has noted that giving a curative instruction at the time of the prosecutor's comment rather than a general instruction at the conclusion of the case may do more harm than good by calling the jurors' attention to a brief, innocuous statement, the significance of which may otherwise have gone unnoticed.  *See United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989).

> defendant is not admissible to prove guilt of the charged offense. *People v. Williamson*, 205 Mich App 592; 517 NW2d 846 (1994). Although the prosecutor's reference to incarceration could lead a listener to conclude that defendant committed a prior act of misconduct, we find defendant is not entitled to reversal on this basis. Defense counsel did not move to suppress the statement prior to trial. Moreover, despite the fact he had ample time to object before the prosecutor got to that portion of the statement referring to prior incarceration, defense counsel did nothing. We find it would be improper to reverse defendant's conviction after defense counsel sat idly by and allowed potentially prejudicial testimony to be read to the jury.

*Evans*, 1996 WL 33348558 at *2. The denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Even assuming that the prosecutor erred in reading the disputed portion of the statement, Petitioner has failed to show that the error was so flagrant as to deprive him of a fair trial. The reference was not misleading as to relevant matters and was isolated in nature. Additionally, the prosecution did not make a character or propensity argument based upon Petitioner's prior incarceration. There was also significant evidence of guilt presented at trial. Petitioner has thus failed to show that the prosecutor's actions deprived him of a fundamentally fair trial. Habeas relief is not warranted.[7]

### G.    Re-Reading of Testimony Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court refused to allow key testimony to be read back to the jury. During the deliberations, the jurors asked for a copy of the testimony of Tommy Moore, Jimmy Rafferty, and Daniel Tinney. The trial court responded that it would take some time to obtain such transcripts and advised the jury to remember the testimony collectively. Petitioner claims that his due process rights were violated because the trial court discouraged the jury from having testimony read back to them. Respondent contends

---

[7]Given that these prosecutorial misconduct claims lack merit, Petitioner cannot prevail on any claim that counsel was ineffective for failing to object to such matters. *See Strickland, supra*.

that this claim is waived by the failure to cite authority and lacks merit.

The Michigan Court of Appeals denied relief on this claim finding that the trial court did not foreclose the possibility of rereading the testimony to the jury. *See Evans*, 1996 WL 33348558 at *3. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner relies upon state law in making this claim and fails to cite to any Supreme Court authority in support of this claim. It is well-settled that habeas relief may not be granted on the basis of a state law error. *See, e.g., Estelle*, 502 U.S. at 67-68. There is no federal constitutional law which requires that a jury be provided with witness testimony. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 477 (6th Cir. 2006). No United States Supreme Court decision requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub*, 175 F. Supp.2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley*, 192 Fed. Appx. at 477; *Spalla v. Foltz*, 615 F. Supp. 224, 233-34 (E.D. Mich. 1985). Moreover, the record shows that the trial court instructed the jurors to recall the testimony collectively because transcripts were not available and to continue deliberations. The jury did so and returned a verdict. Petitioner has not shown how he was prejudiced by the trial court's actions. Habeas relief is not warranted on this claim.

## V.     CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims in his petition and denies the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability

25

must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id*. at 336-37.  When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not find the Court's procedural ruling on his defaulted claims debatable. A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

26

27

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed on appeal *in forma pauperis* are **DENIED**.




S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 8, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 8, 2009.


S/Denise Goodine
Case Manager